HOME BUILDERS ASSOCIATION OF DAYTON & the MIAMI VALLEY et al., Appellees and Cross–Appellants;

Time Warner Cable, Division of Time Warner Entertainment Company, L.P., Appellee,

v.

CITY OF LEBANON et al., Appellants and Cross–Appellees.

[Cite as *Home Builders Assn. of Dayton & Miami Valley v. Lebanon*, 167 Ohio App.3d 247, 2006-Ohio-595.]

Court of Appeals of Ohio,
Twelfth District, Warren County.

Nos. CA2005–01–002 and CA2005–01–005.

Decided Feb. 13, 2006.

McNamee & McNamee, P.L.L., Michael P. McNamee, and Cynthia P. McNamee, for appellees and cross-appellants Home Builders Association of Dayton & the Miami Valley, Oberer Residential Construction, Ltd., Design Homes & Development Co., and Design Properties VIII, Ltd.

Aronoff, Rosen & Hunt and Richard A. Paolo, for appellees and cross-appellants Home Builders Association of Greater Cincinnati, Drees Company, M/I Schottenstein Homes, Inc., and Crossman Communities, Inc.

Ulmer & Berne L.L.P., and Donald J. Mooney Jr., for appellee Time Warner Cable.

Dinsmore & Shohl L.L.P., James A. Comodeca, Alan H. Abes, Mark S. Yurick, and Amy Ball, for appellants and cross-appellees city of Lebanon, City Council of City of Lebanon, Pat Clements, and James Baldwin.

POWELL, Presiding Judge.

{¶ 1} Defendant-appellant and cross-appellee, the city of Lebanon, appeals the decision of the Warren County Court of Common Pleas finding unconstitutional the city's ordinance requiring that all newly constructed commercial and residential units be connected to the city's broadband telecommunications system. We affirm the common pleas court's decision.

{¶ 2} In 1997, the city of Lebanon decided to develop a broadband telecommunications system. The city contracted with a private company to construct the system, which included a hybrid fiber coaxial ("HFC") network, a fiber optic

network through which the city could offer telecommunications services to its residents. In 1999, the city began offering cable television and high-speed internet service via the HFC network. In 2002, the city expanded its offerings to include telephone service. Residents could purchase the services individually, or they could purchase all three services "bundled" together at a discounted rate. The city also provided automatic electric meter reading to approximately 200 homes connected to the system, beginning in 2001. However, the city determined that the extension of that service to additional homes would be too costly.

{¶ 3} The HFC network was constructed in the public right-of-way. From the right-of-way, the city connected the network to residential and nonresidential units by extending copper wiring across private property to the individual unit. The wiring connected to a box that was affixed to an exterior wall of the unit served. The parties refer to the connection of the HFC network to individual units as a "telecommunications drop."

{¶ 4} In March 2002, the city adopted an ordinance requiring that all newly constructed units be connected to the telecommunications system. The ordinance stated that connection "shall be initiated upon the granting of a new construction permit" by the city. The ordinance also required payment of a "telecommunications connection fee" for each unit connected to the system. For "residential" units, the fee was $1,250. For "industrial" units, the fee was $2,000. According to the city, it imposed the fee not to cover the cost of the telecommunications drop, but to cover the cost of expanding the HFC network in the public right-of-way to newly developed areas of the city. While connection to the system was mandatory under the ordinance, there was no obligation to purchase the services offered by the city.

{¶ 5} In May 2002, plaintiffs-appellees and cross-appellants, Home Builders Association of Dayton & the Miami Valley, Home Builders Association of Greater Cincinnati, Drees Company, Oberer Residential Construction, Ltd., M/I Schottenstein Homes, Inc., Crossman Communities, Inc., Design Homes & Development, Inc., and Design Properties VIII, Ltd. (collectively, "the homebuilders"), filed a complaint in the common pleas court against numerous parties including the city, the city council, the city manager, and the city's director of telecommunications (collectively, "the city"). In June 2002, the homebuilders filed their first amended complaint. The homebuilders asserted nine claims in that complaint, including the following three claims at issue in this case: (1) the city's ordinance mandating connection to the telecommunications system was unconstitutional because it amounted to a "taking" without just compensation, (2) the city's enactment of the ordinance constituted an abuse of the city's corporate powers under R.C. 733.56 and 733.59, and (3) the ordinance deprived the homebuilders of their constitutional rights in violation of Section 1983 et seq., Title 42, U.S.Code. The homebuilders

sought a declaratory judgment that the city's ordinance was unconstitutional, a preliminary and permanent injunction prohibiting the city from enforcing the ordinance, and an award of their attorney fees incurred in the action.

{¶ 6} In June 2002, intervenor-appellee, Time Warner Cable, filed a third-party complaint against the city, alleging that the ordinance violated R.C. 1332.04(B)(1)(a) and 1332.04(B)(1)(b). Time Warner asserted that by enacting the ordinance, the city was unlawfully preferring and giving an advantage to a public cable service provider and discriminating against Time Warner, a private cable service provider. Time Warner also adopted the claims asserted in the complaint filed by the homebuilders. Like the homebuilders, Time Warner sought a declaration that the ordinance was unconstitutional, a preliminary and permanent injunction barring the enforcement of the ordinance, and an award of its attorney fees incurred in the action.

{¶ 7} The city, the homebuilders, and Time Warner all filed motions for summary judgment. The common pleas court granted the homebuilders' motion as to part of their first claim. The court found that the "mandatory connection" portion of the city's ordinance was an unconstitutional taking and was therefore unenforceable. The court determined that the "telecommunications fee" portion of the ordinance was severable from the "mandatory connection" portion and enforceable, but only with respect to those who requested connection to the telecommunications system.

{¶ 8} The court granted the city's motion with respect to the homebuilders' fifth and seventh claims for relief. The court found that the homebuilders did not have taxpayer standing to bring an action under R.C. 733.56 and 733.59. Further, the court found that the homebuilders could not maintain their claim under Section 1983 et seq., Title 42, U.S.Code because they had not exhausted adequate state law remedies. The court denied the summary judgment motions of the city, the homebuilders, and Time Warner in all other respects. Further, based on its resolution of the homebuilders' first, fifth, and seventh claims, the court dismissed all the parties' remaining claims as moot.

{¶ 9} The city now appeals the common pleas court's decision, assigning two errors. Two groups of homebuilders filed separate cross-appeals.[1]

{¶ 10} The city's Assignment of Error No. 1:

---

1. Home Builders Association of Dayton & the Miami Valley, Oberer Residential Construction, Ltd., Design Homes & Development, Inc., and Design Properties VIII, Ltd. (the "Dayton Homebuilders") filed a cross-appeal raising two cross-assignments of error. Home Builders Association of Greater Cincinnati, Drees Company, M/I Schottenstein Homes, Inc., and Crossman Communities, Inc. (the "Cincinnati Homebuilders") filed a separate cross-appeal raising one cross-assignment of error. Both cross-appeals raise substantially similar arguments.

{¶ 11} "The trial court erred by holding that the mandatory connection is an unlawful taking of the home builders' property."

{¶ 12} In this assignment of error, the city argues that the mandatory connection portion of the ordinance does not amount to an unconstitutional taking of the homebuilders' property. The city argues that the homebuilders consented to the mandatory connection when they requested electric service from the city.

{¶ 13} Summary judgment is proper where (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can only come to a conclusion adverse to the party against whom the motion is made, construing the evidence most strongly in that party's favor. *Harless v. Willis Day Warehousing* Co. (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 375 N.E.2d 46. We review a trial court's decision granting summary judgment under a de novo standard of review. *Burgess v. Tackas* (1998), 125 Ohio App.3d 294, 296, 708 N.E.2d 285.

{¶ 14} Initially, we note that legislative enactments are presumed to be constitutional. *Adamsky v. Buckeye Local School Dist.* (1995), 73 Ohio St.3d 360, 361, 653 N.E.2d 212. However, that presumption is rebuttable. Id., citing *State ex rel. Dickman v. Defenbacher* (1955), 164 Ohio St. 142, 57 O.O. 134, 128 N.E.2d 59, paragraph one of the syllabus. The party challenging the enactment bears the burden of proving, beyond a reasonable doubt, that the enactment is incompatible with a particular constitutional provision. See *Oliver v. Feldner,* 149 Ohio App.3d 114, 2002-Ohio-3209, 776 N.E.2d 499, ¶ 37.

{¶ 15} The Takings Clause of the Fifth Amendment to the United States Constitution provides that "private property" shall not "be taken for public use, without just compensation." This limitation on governmental power has been imposed on the states via the Fourteenth Amendment. See *Phillips v. Washington Legal Found.* (1998), 524 U.S. 156, 163, 118 S.Ct. 1925, 141 L.Ed.2d 174.

{¶ 16} Any permanent physical occupation of private property by the government constitutes a taking, requiring just compensation to the private property owner. See *Loretto v. Teleprompter Manhattan CATV Corp.* (1982), 458 U.S. 419, 432, 102 S.Ct. 3164, 73 L.Ed.2d 868; *Yee v. Escondido* (1992), 503 U.S. 519, 538–539, 112 S.Ct. 1522, 118 L.Ed.2d 153. "[P]ermanent occupations of land by such installations as telegraph and telephone lines, rails, and underground pipes or wires are takings even if they occupy only relatively insubstantial amounts of space and do not seriously interfere with the landowner's use of the rest of his land." *Loretto,* 458 U.S. at 430, 102 S.Ct. 3164, 73 L.Ed.2d 868 (defendant's cable installation constituted a taking where it involved the "direct physical attachment of plates, boxes, wires, bolts, and screws" to plaintiff's building).

{¶ 17} Lebanon Codified Ordinances 916.02(16) states in its entirety as follows:

{¶ 18} "BROADBAND UTILITY Telecommunications Connection Fee

{¶ 19} "Before any connection is made to the City's Broadband Utility Telecommunications system, there shall be paid to the Telecommunications broadband fund for each unit to be served by each connection, a connection fee based on the type of unit as shown below. Such connection shall be initiated upon the granting of a new construction permit by the City of Lebanon. Such connection is mandatory even though certain services offered by the City are of a non-mandatory nature.

"Residential dwelling (single or multi-family)          $1,250.00 (per unit)

"Industrial                                             $2,000.00 (per unit)"

{¶ 20} Based on *Loretto,* the mandatory connection imposed by the ordinance constitutes a taking. The record shows that establishing the connection involves extending wires across private property, as well as affixing a telecommunications box to an exterior wall of a structure on private property. Such a permanent physical occupation by the city is unconstitutional absent just compensation, even though it occupies a relatively insubstantial amount of space and does not seriously interfere with the landowner's use of the rest of the land. See *Loretto,* 458 U.S. at 430, 102 S.Ct. 3164, 73 L.Ed.2d 868.

{¶ 21} The city does not contest that the ordinance authorizes a taking.[2] However, the city argues that the homebuilders consented to the taking, thus removing the city's obligation to justly compensate them. The city argues that the rules and regulations of its electric department allow it to enter the homebuilders' property to establish the connection. The city asserts that the homebuilders agreed to abide by the electric department's rules and regulations when they applied to the city for electric service. The homebuilders do not dispute that they agreed to be subject to the rules of the electric department.

{¶ 22} The city points to the following rule of its electric department: "The duly authorized agents of the City shall have the right and privilege to enter the Consumer's premises at all reasonable hours for the purpose of * * * installing, inspecting, keeping in repair and for removal of any or all of the City's equipment used in connection with the supply of electricity." The city argues that the rule allows it to install the connection to the telecommunications system, which it says is "equipment used in connection with the supply of electricity."

{¶ 23} With respect to the homebuilders' property, it is undisputed that the city is not currently using the telecommunications system "in connection with the

---

2. The city also does not argue that it has an easement allowing it to establish the telecommunications connections for individual units.

supply of electricity." As previously stated, the city did initially provide automatic electric meter reading to approximately 200 homes, but has since ceased the expansion of that program. However, the city asserts that it intends to use the telecommunications system "for multiple electric services" in the future, such as automatic electric meter reading, "load management systems, automatic outage reporting systems, and real time pricing." In an affidavit, the city manager stated that the system allows for the provision of such services once such services become "available, cost-effective, and desirable." Based on those future uses, the city argues that the rule of its electric department authorizes it to enter the homebuilders' property to install the telecommunications connections.

{¶ 24} After reviewing the record, we conclude that the homebuilders did not consent to a taking. The plain language of the rule cited by the city authorizes it to enter the homebuilders' property for the purpose of installing equipment "used in connection with the supply of electricity." The record shows that the city was not installing equipment "used in connection with the supply of electricity" when it installed the connections to the telecommunications system on the homebuilders' property. Rather, the city was installing equipment used in connection with the supply of cable television, high-speed internet, and telephone services. While the city may intend to use the telecommunications system "in connection with the supply of electricity" at some point in the future, such use is uncertain. The future uses for the telecommunications system discussed by the city depend on whether those uses become "cost-effective" or "desirable." We cannot reasonably construe the homebuilders' agreement to the electric department rule as giving consent to the particular taking in this case.

{¶ 25} Accordingly, we conclude that the mandatory-connection portion of the ordinance permits an unconstitutional taking. Therefore, we overrule the city's first assignment of error.

{¶ 26} The city's Assignment of Error No. 2:

{¶ 27} "The trial court erred by holding that the telecommunications fee is not wholly severable from the mandatory connection."

{¶ 28} The common pleas court determined that the telecommunications fee portion of the ordinance was severable from the mandatory-connection portion. The court found that, minus the unconstitutional mandatory-connection portion, the ordinance still required the payment of the telecommunications fee "for each unit to be served by each connection." Because the connection was no longer mandatory, the court determined that "each unit to be served" meant each unit that requested connection. Therefore, the court ordered that the city could collect the fee only from units that requested the connection.

{¶ 29} The city argues that the common pleas court erred in not determining that the telecommunications-fee portion of the ordinance was "wholly" severable from the mandatory-connection portion. Specifically, the city argues that the remaining telecommunications-fee portion of the ordinance allows it to collect the telecommunications fee from all property owners, even those who do not request connection to the system. The city asserts that the telecommunications fees are not related to the mandatory connection because the fees do not cover the cost of the connection, but the cost of extending the HFC network to newly developed areas of the city.

■■ {¶ 30} "It is a general rule of law that if an unconstitutional part of an Act is stricken, and if that which remains is complete in and of itself, and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which is rejected, the remaining part must be sustained." *Livingston v. Clawson* (1982), 2 Ohio App.3d 173, 177, 2 OBR 189, 440 N.E.2d 1383. The Ohio Supreme Court has set forth a three-part test for determining whether provisions of a statute or ordinance may be severed. A court must determine (1) whether the constitutional and unconstitutional portions are capable of separation so that each may be read and may stand by itself, (2) whether the unconstitutional portion is so connected with the general scope of the whole as to make it impossible to give effect to the apparent intention of the legislative body if the portion is stricken out, and (3) whether the insertion of words or terms is necessary in order to separate the constitutional portion from the unconstitutional portion and to only give effect to the former. *Geiger v. Geiger* (1927), 117 Ohio St. 451, 465–466, 160 N.E. 28; see, also, *Simmons–Harris v. Goff* (1999), 86 Ohio St.3d 1, 8, 711 N.E.2d 203.

{¶ 31} Minus the unconstitutional mandatory-connection portion, Lebanon Codified Ordinances 916.02(16) reads as follows:

{¶ 32} "BROADBAND UTILITY Telecommunications Connection Fee

{¶ 33} "Before any connection is made to the City's Broadband Utility Telecommunications system, there shall be paid to the Telecommunications broadband fund for each unit to be served by each connection, a connection fee based on the type of unit as shown below. ~~Such connection shall be initiated upon the granting of a new construction permit by the City of Lebanon. Such connection is mandatory even though certain services offered by the City are of a non-mandatory nature.~~

"Residential dwelling (single or multi-family)          $1,250.00 (per unit)

"Industrial                                                              $2,000.00 (per unit)"

{¶ 34} Applying *Geiger*, we agree with the common pleas court's conclusion that the telecommunications-fee portion of the ordinance is severable from the

mandatory-connection portion. The telecommunications-fee portion is separate and distinct and is capable of standing by itself. Further, the mandatory-connection portion is not so connected to the general scope of the whole as to make it impossible to give effect to the intention of the legislative body once the mandatory portion is stricken. Under the ordinance minus the mandatory-connection portion, the legislative intent to collect a fee for each connection to the system remains effective. Finally, it is not necessary to insert words or terms in order to separate the constitutional portion from the unconstitutional portion and only give effect to the former.

{¶ 35} We disagree with the city's argument that the telecommunications fee portion is "wholly" severable, i.e., that the city can continue to impose the fee on those property owners who do not request connection. After removing the two sentences comprising the mandatory-connection portion, the plain language of the remaining portion of the ordinance requires that "[b]efore any connection is made" to the system, the telecommunications fee must be paid "for each unit to be served by each connection." Because the connection is no longer mandatory, "each unit to be served by each connection" means each unit that requests connection. Therefore, under the ordinance minus the severed portion, the city can collect the fee only from those units that request connection to the system.

{¶ 36} Accordingly, there was no error in the common pleas court's decision finding that the mandatory-connection portion of the ordinance was severable. There was also no error in the court's decision enjoining the city from collecting the telecommunications fee "from property owners who do not or have not requested connection" to the telecommunications system. Therefore, we overrule the city's second assignment of error.

{¶ 37} The Dayton homebuilders' Cross–Assignment of Error No. 1:

{¶ 38} "The trial court erred when it denied the Dayton home builders' 42 U.S.C. 1983 claim for failure to exhaust adequate state law remedies."

{¶ 39} The Cincinnati homebuilders' Cross–Assignment of Error No. 1:

{¶ 40} "The trial court erred to the prejudice of Cincinnati plaintiffs, as the prevailing parties in this matter, in denying their request for attorney fees."

{¶ 41} Because the above cross-assignments of error raise substantially similar issues, we address them together. In their first cross-assignment of error, the Dayton homebuilders argue that the common pleas court erred in denying their claim for relief under Section 1983, Title 42, U.S.Code on the grounds that they failed to exhaust adequate state-law remedies. According to the Dayton homebuilders, they did not have any adequate state-law remedies to exhaust. Even if the court's denial of their Section 1983 claim was appropriate, the Dayton homebuilders argue that they were nevertheless entitled to attorney

fees under Section 1988, Title 42, U.S.Code because they were the "prevailing parties" in the action. The Cincinnati homebuilders make a substantially similar "prevailing parties" argument under the first issue for review of their sole cross-assignment of error.

{¶ 42} Generally, there is no requirement that a party exhaust adequate state-law remedies prior to filing an action under Section 1983. *Patsy v. Florida Bd. of Regents* (1982), 457 U.S. 496, 516, 102 S.Ct. 2557, 73 L.Ed.2d 172; see, also, *Wudtke v. Davel* (C.A.7, 1997), 128 F.3d 1057, 1063. However, in *Williamson Cty. Regional Planning Comm. v. Hamilton Bank of Johnson City* (1985), 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126, the Supreme Court created an exception to the general requirement for Section 1983 claims that are based on an alleged violation of the Takings Clause. Under *Williamson Cty.*, the party filing the Section 1983 action must "seek compensation through the procedures the State has provided for doing so" before the claim can proceed. Id. at 194, 105 S.Ct. 3108, 87 L.Ed.2d 126. The exhaustion rule in *Williamson Cty.* applies both to cases involving regulatory takings and to cases involving physical takings. See *Arnett v. Myers* (C.A.6, 2002), 281 F.3d 552, 563; *Pascoag Reservoir & Dam, L.L.C. v. Rhode Island* (C.A.1, 2003), 337 F.3d 87, 91–92; *Greenfield Mills, Inc. v. Macklin* (C.A.7, 2004), 361 F.3d 934, 958.

{¶ 43} We reject the homebuilders' argument that they did not have any adequate state law remedies to exhaust. A review of the relevant case law indicates that mandamus is a state-law remedy of which the homebuilders could have availed themselves. See *State ex rel. Elsass v. Shelby Cty. Bd. of Commrs.* (2001), 92 Ohio St.3d 529, 533, 751 N.E.2d 1032 ("Mandamus is the appropriate action to compel public authorities to institute appropriation proceedings where an involuntary taking of private property is alleged"); *Buckles v. Columbus Mun. Airport Auth.* (C.A.6, 2004), 90 Fed.Appx. 927, 930 (noting that mandamus action for above purpose has become routine in Ohio).

{¶ 44} With respect to the homebuilders' argument that they are nevertheless entitled to attorney fees pursuant to Section 1988, Title 42, U.S.Code because they are the "prevailing party," we find *Natl. Private Truck Council, Inc. v. Oklahoma Tax Comm.* (1995), 515 U.S. 582, 115 S.Ct. 2351, 132 L.Ed.2d 509, to be controlling. In that case, the Supreme Court held that "when no relief can be awarded pursuant to § 1983, no attorney's fees can be awarded under § 1988." Id. at 592, 115 S.Ct. 2351, 132 L.Ed.2d 509. See, also, *Bonner v. Guccione* (C.A.2, 1999), 178 F.3d 581, 596; *Gerling Global Reinsurance Corp. of Am. v. Garamendi* (C.A.9, 2005), 410 F.3d 531, 532 ("If a plaintiff does not have a substantial, properly cognizable § 1983 claim, then § 1988 attorney's fees may not be awarded"). Because the homebuilders pleaded a Section 1983 claim that the

common pleas court properly found not to be cognizable, the court did not err in failing to award the homebuilders attorney fees under Section 1988.

{¶ 45} Accordingly, we overrule the Dayton homebuilders' first cross-assignment of error and the Cincinnati homebuilders' sole cross-assignment of error as it relates to issues regarding sections 1983 and 1988. Neither group of homebuilders was entitled to relief under Section 1983, including attorney fees under Section 1988.

{¶ 46} The Dayton homebuilders' Cross–Assignment of Error No. 2:

{¶ 47} "The trial court erred as a matter of law when it concluded that the Dayton home builders did not have standing to bring their fifth claim for relief asserting [a] violation of Ohio's taxpayer statutes."

{¶ 48} In this assignment of error, the Dayton homebuilders argue that the common pleas court erred in determining that they did not have standing to bring a taxpayer action under R.C. 733.56 and 733.59. The Dayton homebuilders argue that they had standing to bring such an action, and that they were entitled to relief, including attorney fees under R.C. 733.61. The Cincinnati homebuilders make a substantially similar argument under the second issue for review under their sole cross-assignment of error.

{¶ 49} In their first amended complaint, the homebuilders asserted a claim under R.C. 733.56 and 733.59. Those sections permit a taxpayer to seek an injunction on behalf of a municipal corporation in order to restrain the municipal corporation's "abuse of its corporate powers." Further, R.C. 733.61 allows a court to award a taxpayer "reasonable compensation" for attorney fees incurred in bringing the action.

{¶ 50} With respect to actions brought under R.C. Chapter 733, the Ohio Supreme Court has defined "taxpayer" as "any person who, in a private capacity as a citizen, elector, freeholder or taxpayer, volunteers to enforce a right of action on behalf of and for the benefit of the public." *State ex rel. Nimon v. Springdale* (1966), 6 Ohio St.2d 1, 35 O.O.2d 1, 215 N.E.2d 592, paragraph two of the syllabus. Consistent with that definition, in order to have standing to bring a taxpayer suit under R.C. Chapter 733, the taxpayer's aim must be to enforce a public right, regardless of any personal or private motive. *Cleveland ex rel. O'Malley v. White,* 148 Ohio App.3d 564, 2002-Ohio-3633, 774 N.E.2d 337, ¶ 45. When the suit is merely for the taxpayer's own benefit, no public right exists, and the taxpayer action cannot be maintained. *State ex rel. Caspar v. Dayton* (1990), 53 Ohio St.3d 16, 20, 558 N.E.2d 49.

{¶ 51} Courts have found taxpayer standing in numerous cases in which the taxpayer's aim was the enforcement of a public right. See *Nimon,* 6 Ohio St.2d

at 4–5, 35 O.O.2d 1, 215 N.E.2d 592 (taxpayer sued city to compel certification of referendum petition); *State ex rel. White v. Cleveland* (1973), 34 Ohio St.2d 37, 40, 63 O.O.2d 79, 295 N.E.2d 665 (taxpayer sued city for right to make copies of public records); *State ex rel. Cater v. N. Olmsted* (1994), 69 Ohio St.3d 315, 323, 631 N.E.2d 1048 (taxpayer sued city to enforce public's right to services of city official); *State ex rel. Ohio Academy of Trial Lawyers v. Sheward* (1999), 86 Ohio St.3d 451, 474, 715 N.E.2d 1062 (taxpayers sued to challenge on separation-of-powers grounds the enactment of "tort reform" legislation).

{¶ 52} Courts have not found taxpayer standing in cases in which the aim of the suit was merely the taxpayer's own benefit and not the benefit of the public at large. See *Caspar*, 53 Ohio St.3d at 20, 558 N.E.2d 49 (police officers sued city for right to vacation pay and fringe benefits based on alleged violation of collective bargaining agreement); *O'Malley*, 2002-Ohio-3633, at ¶ 47 (electricians' union sued city to enjoin hiring of nonelectricians for certain work); *Assn. of Cleveland Fire Fighters, Local 93 v. Cleveland*, 156 Ohio App.3d 368, 2004-Ohio-994, 806 N.E.2d 170, ¶ 16 (firefighters' union sued city to compel wage differentiation between different ranks of officers as incentive for qualified individuals to seek higher rank); *Cincinnati ex rel. Radford v. Cincinnati*, Hamilton App. No. C–030749, 2004-Ohio-3501, 2004 WL 1486072, ¶ 13 (trustees of municipal employees' retirement system sued city to compel transfer of certain funds to retirement system).

{¶ 53} The common pleas court found that the homebuilders' action against the city was one "primarily to enforce * * * [the homebuilders'] private rights." The court found that while there was "some consequential public benefit," that could be said for most litigation in which a plaintiff prevails against the government. Accordingly, the court determined that the homebuilders did not have "taxpayer standing" to bring an action under R.C. Chapter 733.

{¶ 54} Having reviewed the relevant case law regarding taxpayer actions, we conclude that the homebuilders did not have standing to bring a taxpayer action. The rights sought to be enforced by the homebuilders were essentially private in nature and were not comparable to the rights sought to be enforced in *Nimon, White, Cater*, and *Sheward*. As the homebuilders argue, there was some general benefit to the public in preventing the city from enforcing an unconstitutional ordinance. However, the interests pursued by the homebuilders were primarily related to a narrow class of citizen/taxpayers who were required to pay the telecommunications fee: those engaging in new construction within the city. As the court stated in *Assn. of Cleveland Fire Fighters, Local 93*, "[t]he enforcement of private rights often confers a public benefit, but the ability to contemplate a public benefit does not translate every private action against a municipality into a taxpayer's suit." 156 Ohio App.3d 368, 2004-Ohio-

994, 806 N.E.2d 170, at ¶ 17. See, also, *Brauer v. Cleveland* (1966), 7 Ohio St.2d 94, 96, 36 O.O.2d 80, 218 N.E.2d 599 (suit's aim was not to enforce public right where "sole purpose of the action was to prevent the municipality from requiring payment of fees by a limited class of property owners, of which plaintiff is a member").

{¶ 55} Accordingly, we overrule the Dayton homebuilders' second cross-assignment of error and the Cincinnati homebuilders' sole cross-assignment of error as it relates to taxpayer standing. Neither group of homebuilders had standing to bring a taxpayer action under R.C. Chapter 733, and, therefore, neither group was entitled to attorney fees under that chapter.

{¶ 56} The judgment is affirmed.

Judgment affirmed.

WALSH and BRESSLER, JJ., concur.