DECISION.
{¶ 1} Plaintiff-appellant www.headhunting.org ("Headhunting") filed a breach-of-contract complaint against defendant-appellee Logicalis, Inc. Headhunting claimed that its contractual rights were violated by Logicalis's failure to pay a referral fee after hiring Darrin McCarthy, a candidate referred to Logicalis by Headhunting's Michael Mudd. The trial court ruled against Headhunting. Headhunting now appeals, arguing that the trial court erred by (1) failing to grant its summary judgment motion, and (2) ignoring the manifest weight of the evidence in finding that another corporation named Centennial had not assigned Mudd its rights to the Logicalis contract.
 {¶ 2} Because Headhunting subsequently lost at trial on the same issues raised in its motion for summary judgment, there was no error by the trial court in denying its motion for summary judgment. Additionally, we are unable to sustain the manifest-weight claim because Headhunting has failed to provide an adequate record of the trial court's proceedings. Headhunting has only furnished a partial transcript — just the testimony of its witnesses — and excluded opening statements, all of Logicalis's witnesses' testimony, and closing arguments. We must presume the regularity of the trial court's proceedings and affirm.
 I. When was the Referral? {¶ 3} Mudd is the owner and president of Headhunting, a professional recruiting company that he started after he left Centennial, Inc. Mudd has been a professional recruiter for more than 20 years, focusing on recruiting and placing engineering and technical professional candidates.
 {¶ 4} While working for Centennial, Mudd performed services under Logicalis's contract for the recruitment and placement of technical professional candidates for its Cincinnati office. The contract between Centennial and Logicalis provided that if a referral candidate was subsequently hired within one year of the referral date, Logicalis would pay a referral fee of 30 percent of the first year's earnings of the candidate. Mudd's contact with Logicalis was William Johnson, a director at Logicalis who hired for their "E-Business Operations Center."
 {¶ 5} In December 2000, Mudd, while still employed at Centennial, referred Darrin McCarthy to Johnson for the position of Service Operations Delivery Technician. Mudd submitted McCarthy's resume to Logicalis and scheduled and accompanied McCarthy to an interview. Although McCarthy was not interested in the position, Johnson kept his résumé on file.
 {¶ 6} In the spring of 2001, Mudd left Centennial and started his own company, Headhunting. Mudd maintained at trial that Centennial had assigned to him Centennial's rights to the Logicalis contract. To bolster this argument, Mudd directed the court to a September 2001 letter from Centennial to Logicalis, in which Centennial authorized Logicalis to issue payments directly to Mudd for any services he rendered.
 {¶ 7} In November 2001, the position of Service Delivery Operations Manager became available at Logicalis after another employee was terminated. Logicalis maintained at trial that Mudd contacted Johnson in November 2001 about this opening and again suggested McCarthy. Mudd disagreed, claiming that he had discussed McCarthy with Johnson in February 2002, but that Johnson did not pursue McCarthy at that time.
 {¶ 8} In September 2002, Logicalis hired McCarthy as a contract employee through SmartSource, another placement firm. After a four-month trial period, Logicalis hired McCarthy in January 2003 as a full-time employee, in the role of Service Operations Manager.
 {¶ 9} McCarthy maintained that Headhunting and Mudd had nothing to do with his hiring as a manager. Instead, he claimed that he learned of the position through a friend and set up an interview with Johnson where he tendered a current résumé.
 {¶ 10} Months later, Mudd learned of McCarthy's hiring during a social gathering. He subsequently submitted an invoice to Johnson demanding payment of a $28,800 referral fee for McCarthy's hire. Logicalis refused payment, stating in letters to Mudd that his unsolicited telephone call did not qualify as a referral. At trial, Johnson agreed that a referral under the Centennial fee schedule required a formal presentation of a résumé and a candidate sitting in front of him.
 {¶ 11} After the exchange of letters between Headhunting and Logicalis, Johnson left his employment at Logicalis. He then remembered Mudd calling him in February 2002 about McCarthy, and he later stated at trial that Mudd deserved payment.
 {¶ 12} The trial court ruled against Headhunting. But because we have only a partial trial transcript, we do not have any of the court's rationale for its finding against Headhunting. We can only take the parties' representation that the trial court believed the letter from Centennial to Logicalis authorizing payment directly to Mudd for services rendered was for past services and not an assignment.
 II. Motion for Summary Judgment {¶ 13} Headhunting's first assignment of error claims that the trial court erred by failing to grant its motion for summary judgment. Headhunting believes that there was undisputed evidence of (1) a written contract between Centennial and Logicalis; (2) an assignment of Centennial's interest in the contract to Mudd; and (3) Mudd's performance under the contract by referring a candidate to Logicalis who was hired within one year of the referral. Headhunting maintains that this evidence entitled it to judgment as a matter of law for breach of contract based on Logicalis's failure to pay the referral fee.
 {¶ 14} The Ohio Supreme Court has held that "any error by a trial court in denying a motion for summary judgment is rendered moot or harmless if a subsequent trial on the same issues raised in the motion demonstrates that there were genuine issues of material fact supporting a judgment in favor of the party against whom the motion was made."[1]
 {¶ 15} Because Headhunting subsequently lost at trial on the same issues raised in its motion for summary judgment, there was no error by the trial court in denying its motion for summary judgment. We conclude that Headhunting's first assignment of error is without merit.
 III. Manifest Weight of the Evidence {¶ 16} Headhunting's second assignment of error maintains that the trial court's decision was against the manifest weight of the evidence because the court found that Centennial had not assigned Mudd its rights under the Logicalis contract. Headhunting claims that not only did Centennial assign its rights to Mudd under a written agreement, but also that the trial court wrongly decided the issue upon a procuring-cause standard.
 {¶ 17} Logicalis disagrees with Headhunting's contention and argues that (1) the letter from Centennial to Logicalis was not an assignment of the Centennial fee schedule to Mudd, but rather an authorization to Logicalis to make payment directly to Mudd for services provided to Logicalis while he was an employee of Centennial; (2) there was no referral of McCarthy within one year of his hiring, as required by the Centennial fee schedule; and (3) Headhunting was not the procuring cause of McCarthy's employment with Logicalis.
 {¶ 18} In determining whether a trial court's decision was against the manifest weight of the evidence, a court of appeals must presume that the findings of the trier of fact were correct.[2] The rationale of giving deference to the findings of the trial court rests on the proposition that the trial court is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and to use these observations in weighing the credibility of the proffered testimony.[3] Therefore, a judgment supported by competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence.[4]
 {¶ 19} In this instance, we are unable to sustain the manifest-weight claim because Headhunting has failed to provide an adequate record of the trial court's proceedings. Headhunting has only furnished a partial trial transcript — just the testimony of its witnesses — and has excluded opening statements, all of Logicalis's witness's testimony, and closing arguments.
 {¶ 20} An appellant bears the burden of providing an adequate record on appeal, including a transcript of the proceedings.[5] "A transcript of all evidence relevant to challenged findings or conclusions is necessary when the appellant contends: (1) they are contrary to the weight of the evidence, or (2) they are unsupported by the evidence. Appellant has the burden of providing a record by transcript or otherwise which exemplifies the claimed error."[6] (This is not a situation where an appellant has followed App.R. 9(B) and notified the appellee of a partial transcript.)[7]
 {¶ 21} Additionally, the Ohio Supreme Court has held that "when portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm."[8]
 {¶ 22} Because of Headhunting failed to provide an adequate record for appeal, we must presume the regularity of the trial court's proceedings and overrule this assignment or error. The trial court's judgment is affirmed.
Judgment affirmed.
Hildebrandt, P.J., and Gorman, J., concur.
[1] See Continental Ins. Co. v. Whittington,71 Ohio St.3d 150, 156, 1994-Ohio-362, 642 N.E.2d 615.
[2] See Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 79-80, 461 N.E.2d 1273.
[3] Id.
[4] See C.E. Morris Co. v. Foley Construction Co. (1978),54 Ohio St.2d 279, 376 N.E.2d 578.
[5] App.R. 9(B).
[6] See Tyrrell v. Investment Assoc., Inc. (1984),16 Ohio App.3d 47, 474 N.E.2d 621; see, also, Knapp v. EdwardsLaboratories (1980), 61 Ohio St.2d 197, 400 N.E.2d 384.
[7] See Painter Dennis, Ohio Appellate Practice (2006), 92-93, Section 4.9.
[8] Knapp, 61 Ohio St.2d at 199, 400 N.E.2d 384.