[Cite as *Hyde Park Circle, L.L.C. v. Cincinnati*, 2016-Ohio-3130.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| HYDE PARK CIRCLE LLC, | : | APPEAL NOS. C-150192 |
| | | C-150211 |
| Plaintiff-Appellee/Cross-Appellant, | : | TRIAL NO. A-1106849 |
| | : | |
| and | : | |
| | : | *O P I N I O N.* |
| STATE EX. REL HYDE PARK CIRCLE LLC, | : | |
| | : | |
| Relator-Appellee, | : | |
| | : | |
| vs. | : | |
| | : | |
| THE CITY OF CINCINNATI, | : | |
| | : | |
| Defendant-Respondent-Appellant/Cross-Appellee, | : | |
| | : | |
| and | : | |
| | : | |
| MILTON R. DOHONEY, JR., in his Official Capacity as City Manager for the City of Cincinnati, | : | |
| | : | |
| and | : | |
| | : | |
| REGINALD ZENO, in his Official Capacity as Finance Director for the City of Cincinnati, | : | |
| | : | |
| Respondents-Appellants, | : | |
| | : | |
| and | : | |
| | : | |
| JOHN R. JURGENSEN CO., | : | |
| | : | |
| Defendant. | : | |

Civil Appeals From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal:  May 25, 2016

*Strauss & Troy, Joseph J. Braun* and *Matthew W. Fellerhoff*, for Plaintiff-Appellee/Cross-Appellant, Hyde Park Circle LLC, and Relator-Appellee State ex rel. Hyde Park Circle LLC,

*Paula Boggs Muething*, City Solicitor, and *Emily E. Woerner*, Assistant City Solicitor, for Defendant-Respondent-Appellant/Cross-Appellee the City of Cincinnati and Defendants-Appellants Milton R. Dohoney, Jr., and Reginald Zeno.

Please note:  this case has been removed from the accelerated calendar.

**MOCK, Presiding Judge.**

{¶1} These appeals relate to a dispute between a developer, Hyde Park Circle ("HPC"), and the city of Cincinnati (the "City") over the handling of a taxpayer-funded development project in Madisonville. We reverse that portion of the trial court's judgment relating to the damages awarded to HPC on its breach-of-contract claim against the City. The remainder of the trial court's judgment is affirmed.

## *Background Facts and Procedural History*

{¶2} The relationship between HPC and the City began when HPC approached the City with a concept for developing the area around the former Oakley Drive-in near the intersection of Red Bank Expressway and Madison Road—29 acres known as Madison Circle. The development, which is located within a tax-increment-financing ("TIF") district designated as District 19, Madisonville Incentive District, would include a nursing-care facility, an assisted-living facility, an office park, retail space, and a pet facility. HPC requested public funding to complete the project and sought to use TIF funds.

{¶3} While the City and HPC were working toward an agreement for public financing and approval of the development, the City informed HPC that Madison Road would need to be widened at the entrance of the property to provide left-hand turn lanes, based upon a traffic-impact study. Because of the steep downgrade of the property at Madison Road, the road would need to be widened to the north, on property owned by the Children's Home of Cincinnati. Ray Schneider, HPC's owner, attempted to negotiate a purchase of a small portion of property from the Children's Home. These negations did not succeed, and the Children's Home director contacted then City Manager Milton Dohoney, involving him in the discussions instead.

{¶4} At the insistence of the then-head of the City's Department of Transportation and Engineering, Eileen Enabnit, Schneider also attempted to negotiate a land purchase from another adjacent property owner, this time to the east of the development. The City wanted to connect the development with Hetzel Street, and eventually Red Bank Road. These negotiations also failed, and HPC acquired an abandoned gas station to the east of the property instead.

{¶5} In December 2007, HPC and the City entered into a development agreement for Madison Circle (the "Development Agreement"). The Development Agreement provided that the City would construct "City Improvements" as outlined in exhibit B2, which would include installing a traffic signal and widening Madison Road. The budget for the City Improvements was just under $1.5 million of TIF funds. Exhibit B1 outlined "Public Improvements," which included a new access road to the development from Madison Road, with associated utilities, creating a cul-de-sac on Charlemar Avenue, and providing an access road connecting Charlemar to the development. The budget for the Public Improvements was just over $2.5 million of TIF funds. The Development Agreement, as well as a service agreement entered into by the parties, limited the total amount of TIF funds to $4 million.

{¶6} During the construction process, the parties' relationship deteriorated. The parties disagreed over the City's handling of the Madison Road widening or "City Improvements," in particular, concessions the City made to the Children's Home. The City had to acquire additional property at Madison Road for the widening from the Children's Home, and the City paid the Children's Home for that property, as well as paying for the installation of landscaping, a sign, a decorative wall, and entranceway. Moreover, midway through the construction process, HPC lost a letter

4

of credit after the FDIC took control of the issuing bank. The City had required HPC to maintain a letter of credit because it had sold part of the property to the nursing-care facilities prior to the execution of the Development Agreement.

{¶7} Because HPC lost the letter of credit, and because the development did not reach completion within 24 months as required by the Development Agreement, the City concluded that HPC had breached the Development Agreement. The City refused to issue further TIF funds to HPC when it submitted reimbursement documentation to the City. One such denied reimbursement related to subcontractor J.K. Muerer, who had performed street work within the development. HPC could not pay J.K. Meurer and could not pay another subcontractor, Kween Industries, Inc., causing the subcontractors to file mechanic's liens against the property.

{¶8} HPC notified the City that it objected to the denied TIF reimbursements, as well as inappropriate payments made from the TIF account by the City. Then, in 2011, Dohoney wrote a letter to HPC, stating that the City believed that HPC breached the Development Agreement by failing to pave two roadways within the development, Babson Place and Sport Dog Drive. The City retained a company, John R. Jurgenson Co., to complete the paving.

{¶9} The complications over the Madison Circle development eventually led HPC to file suit against the City. HPC also discovered that, in 2010, the City had illegally used $5 million of TIF funds, including funds from TIF District 19, to pay the Cincinnati Public School Board to make up for a general-fund budget shortfall. HPC's amended complaint contained, in relevant part, claims for breach of contract and trespass against the City, and a statutory-taxpayer action for mishandling of TIF funds against the City, Dohoney, and the City's finance director. HPC also filed a

trespass claim against John R. Jurgenson Co. HPC dismissed without prejudice its claim against the City for trespass, and eventually settled with John R. Jurgenson Co., dismissing it from the suit.

{¶10} The City filed a counterclaim against HPC for breach of contract for HPC's alleged failure to complete the work during the agreed timeframe, its failure to dedicate streets within the development to the City, and its failure to maintain an irrevocable letter of credit.

{¶11} The matter proceeded to a bench trial. With regard to HPC's statutory-taxpayer action, the trial court determined that the City had illegally taken money from the TIF accounts, including TIF District 19, to pay Cincinnati Public Schools. The trial court enjoined the City in the future from loaning itself neighborhood TIF-account funds to pay general-fund obligations. The trial court ordered the City to return $4 million to the TIF accounts, and awarded HPC $177,124.65 in attorney fees and costs as provided by the taxpayer statute. With regard to HPC's claim for breach of the Development Agreement, the trial court determined that HPC could not be reimbursed for actions it took prior to entering into the Development Agreement, including actions related to acquiring the gas-station property east of the development. The trial court also determined that the City was not liable to HPC for the handling of the Madison Road widening, or "City Improvements." The trial court determined that HPC should have been reimbursed by the City for the services provided by J.K. Meurer, in the amount of $247,500.

{¶12} As to the City's counterclaim against HPC for breach of the Development Agreement, the trial court agreed with the City that HPC had materially breached the Development Agreement by failing to maintain a letter of

credit, but found that the City had suffered no damages. The trial court found that HPC's failure to complete the work within the agreed timeframe did not constitute a breach of the Development Agreement, because the City had contributed to the delay by denying reimbursements. The trial court also ordered HPC to complete roadway work and roadway dedication within the development.

{¶13} Both parties appeal portions of the trial court's decision.

### The City's Appeal

{¶14} In its first assignment of error, the City argues that the trial court erred in awarding $247,500 to HPC on its breach-of-contract claim for the City's failure to reimburse HPC for the work performed by J.K. Meurer.

{¶15} We review a trial court's judgment with regard to a breach-of-contract action under a manifest-weight-of-the-evidence standard, in which we determine whether the trial court's judgment was supported by the greater amount of credible evidence, and whether the plaintiff met its burden of persuasion by a preponderance of the evidence. *Jag Imperial, LLC v. Literski*, 1st Dist. Hamilton No. C-110760, 2012-Ohio-2863, ¶ 10, citing *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517. But, the interpretation of a written contract is in the first instance a question of law that we review de novo. *Jag Imperial* at ¶ 11.

{¶16} The City argues that Section 22(a) of the Development Agreement bars HPC from seeking money damages against the City. Section 22(a) states, in relevant part, "[w]ith the sole exception of an action to recover monies accruing in the TIF that the City has agreed to make available pursuant to this Agreement, no action shall be commenced by the Developer or any successor against the City for monetary damages." There is no dispute that the services provided by J.K. Meurer were a

proper subject for TIF reimbursement. Thus, the clear and unambiguous language of Section 22(a) does not bar HPC from seeking to recover money from the City for reimbursement. *See Aultman Hosp. Assn. v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51, 53, 544 N.E.2d 920 (1989) (the plain language of a contract governs the parties' obligations).

{¶17} The City next argues that even if Section 22(a) does not bar HPC from seeking monetary damages, the trial court erred in awarding HPC $247,500, because the evidence presented at trial showed that only $89,448.77 remained of the available $4 million of TIF funds for the project. At trial, the City presented evidence that it had spent $49,000 to complete work that should have been performed by HPC; namely, paving Sport Dog Way and Babson Place, which were "Public Improvements" under the Development Agreement. The City also presented evidence that only $138,448.77 remained of the $4 million TIF funds. Thus, the City argues that the trial court should have awarded HPC $89,448.77. We agree.

{¶18} The Development Agreement is clear that the project was capped at $4 million in TIF funds. In arguing for this court to disregard the $4-million cap, HPC contends that the "City constantly changed the Agreement as the project moved forward adding requirements and expenses well beyond the $4 million deal." But, the trial court never found, and the record does not show, that the City's alleged added requirements and expenses constituted a breach of contract for which HPC suffered damages.

{¶19} The Development Agreement provided the City with authority to construct the Madison Road widening and a budget of nearly $1.5 million to do it. Although the City may not have used those funds in the most economically feasible

8

way when it came to the Children's Home, HPC bargained away its authority to construct that portion of the project under the Development Agreement. Moreover, at trial, Schneider's testimony reflected his frustration with the City, particularly Enabnit, with regard to the City's goal of connecting the development with Hetzel Street. The record indicates that the Hetzel Street negotiations took place prior to the execution of the Development Agreement, and cannot form the basis of any breach-of-contract action. *See Jag Imperial, LLC*, 1st Dist. Hamilton No. C-110760, 2012-Ohio-2863, at ¶ 13, quoting *Galmish v. Cicchini*, 90 Ohio St.3d 22, 27, 734 N.E.2d 782 (2000) (" 'absent fraud, mistake or other invalidating cause, the parties' final written integration of their agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements.' ").

{¶20} Because the evidence showed that the City had spent $49,000 in TIF funds to complete work that should have been performed by HPC, and that only $138,448.77 remained of the $4-million TIF funds, we sustain the City's first assignment of error to the extent that we hold that the City must pay HPC $89,448.77 for the City's breach of the Development Agreement. The assignment is overruled in all other respects.

{¶21} In the City's second assignment of error, the City argues that the trial court erred when it found in favor of HPC on its statutory-taxpayer action.

{¶22} First, the City argues that the trial court erred in allowing HPC to proceed with a statutory-taxpayer action because HPC never posted security as required by R.C. 733.59. The Ohio Supreme Court has determined that the posting of security is a jurisdictional requirement to bringing a statutory-taxpayer action, but

9

that the prerequisite can be waived by the court. *See State ex rel. Citizens for a Better Portsmouth v. Sydnor*, 61 Ohio St.3d 49, 54, 572 N.E.2d 649 (1991); *State ex rel. Fisher v. Cleveland*, 109 Ohio St.3d 33, 2006-Ohio-1827, 845 N.E.2d. 500.

{¶23} In arguing that HPC failed to satisfy this jurisdictional requirement, the City relies mainly on a prior decision of this court, *McQueen v. Dohoney*, 1st Dist. Hamilton No. C-130196, 2013-Ohio-2424. In *McQueen*, this court held that the plaintiffs-relators failed to comply with the security requirement under R.C. 733.59 where the appearance docket from the clerk of courts indicated that the plaintiffs-relators had failed to pay the initial security deposit, or otherwise deposit any funds with the clerk. *Id.* at ¶ 21. As a result, the *McQueen* court held that the plaintiffs-relators could not be awarded costs under R.C. 733.59.

{¶24} The record indicates that HPC paid the initial security costs of $325 when it filed the original complaint, distinguishing this case from *McQueen* where the record indicated that the costs were never paid. When HPC amended its complaint to add a taxpayer action, HPC did not post additional security. However, the statute does not require a specific amount of security, nor does it require any specific procedure to determine the amount of security. Moreover, HPC offered to post additional security in its response to the City's motion to dismiss, and the trial court denied the City's motion. The trial court either waived any requirement on the part of HPC to pay additional security, or determined that no additional security was required when it denied the City's motion to dismiss. Thus, on these facts, we cannot say that the trial court erred in finding that the security requirement had been met.

{¶25} The City also argues that HPC lacks taxpayer standing because it is not seeking to vindicate a public right, or, in other words, the public benefit in this case is

insufficient to confer taxpayer standing. In order to have taxpayer standing, not only must a relator comply with the requirements of R.C. 733.59, but the remedy sought by the relator must benefit the public. *State ex rel. Teamsters Local Union No. 436 v. Bd. of Cty. Commrs.*, 132 Ohio St.3d 47, 2012-Ohio-1861, 969 N.E.2d 224, ¶ 11. As stated by the Ohio Supreme Court, "when a remedy being pursued is one that is merely for the individual taxpayer's benefit, the taxpayer cannot claim that he is vindicating a public right, and he will not have standing to pursue a taxpayer action." *Id.* at ¶ 12, citing *State ex rel. Caspar v. Dayton*, 53 Ohio St.3d 16, 20, 558 N.E.2d 49 (1990).

{¶26} The City points to trial testimony from Schneider indicating that the lawsuit was based on his personal concerns, and not that of the public, and that the class of people affected by the City's illegal use of funds is too narrow—those who seek to use TIF funds for public development. *See Home Builders Assn. of Dayton v. City of Lebanon*, 167 Ohio App.3d 247, 2006-Ohio-595, 854 N.E.2d 1097, ¶ 54 (12th Dist.) (where the court determined that the interests pursued by the relators in a taxpayer action benefited only those engaging in new construction within the city); *State ex rel. Phillips Supply Co. v. City of Cincinnati*, 2012-Ohio-6096, 985 N.E.2d 257, ¶ 21 (1st Dist.) (no taxpayer standing where the relators challenged a city ordinance that would negatively affect relators' individual property values in only one of the city's 52 neighborhoods); *City of Cincinnati ex rel. Radford v. City of Cincinnati*, 1st Dist. Hamilton No. C-030749, 2004-Ohio-3501, ¶ 12 (holding that relators did not seek to enforce a public right in a taxpayer action where the relators claimed that the city had wrongfully withheld insurance proceeds from the city's

retirement system, which benefitted only the retirement system's participants and beneficiaries).

{¶27} We disagree with the City's argument that HPC's taxpayer action only benefited HPC. In determining that the City had illegally used TIF funds to cover a budget shortfall with Cincinnati Public Schools, the trial court found that the City had "treat[ed] the TIF accounts as if they [were] a mini-general fund from which it can randomly make loans to itself that can be delayed or even forgiven * * *." The testimony at trial indicates that the City considered the borrowing of TIF funds as an internal "loan" that the City officials intended to pay back; however, the testimony also indicated that the City has the ability to forgive its own debt. The City does not dispute the trial court's findings that its actions violated Ohio's TIF laws.

{¶28} Although HPC sought to recover money from the District 19 TIF account in its breach-of-contract action, HPC's taxpayer action sought broader relief in the form of an injunction to keep the City from engaging in its illegal loaning practice in the future, and a judgment requiring the City to return $4 million to all of the neighborhood TIF accounts. TIF laws were established to encourage economic development by diverting tax dollars to public projects within a TIF district. As a way to encourage development within all of the city neighborhoods, the City must abide by TIF laws. The public at large, not just HPC, benefits from economic growth within the city.

{¶29} We determine that the City's arguments with regard to HPC's taxpayer action lack merit, thus, we overrule the City's second assignment of error.

{¶30} In its third assignment of error, the City argues that the trial court erred in awarding attorney fees to HPC on its statutory-taxpayer action because it awarded fees on matters unrelated to the taxpayer claim.

{¶31} The trial court held hearings on attorney fees on two separate days, in October 2014 and January 2015. Although the City filed a transcript of proceedings of the October 2014 hearing, the City never filed a transcript of proceedings of the January 2015 hearing. The trial court continued the hearing until January 2015 at the request of the City, because the City wanted more time to respond to HPC's attorney fees expert.

{¶32} In reviewing the amount of attorney fees awarded by the trial court, this court would need to review any evidence of fees put forth before the trial court at the January 2015 hearing. Because the transcript is necessary to review the City's claimed error, this court must presume regularity of the trial court's decision. *See, e.g., www.headhunting.org, LLC v. Logicalis, Inc.*, 1st Dist. Hamilton No. C-050512, 2006-Ohio-2619, ¶ 21.

{¶33} We overrule the City's third assignment of error.

### *Cross-Appeal by HPC*

{¶34} In its sole assignment of error, HPC claims that the trial court erred in failing to award HPC $105,000 in TIF reimbursement for the work done by Kween Industries, Inc. As to any damages beyond the J.K. Meurer invoice, the trial court specifically found that HPC "ha[d] not met its burden of proof as to its other claims for damages * * * for breach of contract."

{¶35} As discussed within the City's first assignment of error, the Development Agreement limited HPC to $4 million in TIF funds for the project, and

13

the record indicates that only $89,448.77 remains out of that budgeted amount. Having determined that HPC is entitled to $89,448.77 from the City related to the J.K. Muerer invoice, we agree with the trial court that HPC has not met its burden to prove that it is entitled to any further money from the City. Therefore, we overrule HPC's sole assignment of error.

## *Conclusion*

{¶36} In conclusion, we reverse that portion of the trial court's judgment holding that HPC is entitled to $247,500 on its breach-of-contract claim against the City, and we remand the matter to the trial court to issue an order reflecting that HPC is entitled to $89,448.77 on its breach-of-contract claim. The judgment of the trial court is affirmed in all other respects.

Judgment affirmed in part, reversed in part, and cause remanded.

STAUTBERG and SUNDERMANN, JJ., concur.

J. HOWARD SUNDERMANN, JR., retired, from the First Appellate District, sitting by assignment.

Please note:
The court has recorded its own entry on the date of the release of this opinion.