OPINION
{¶ 1} Bruce L. Simeone, Chief of Police of the City of Niles, Ohio, appeals from a judgment of the Trumbull County Court of Common Pleas in a taxpayer action he filed in which he claimed the City of Niles failed to compensate him adequately in accordance with a city ordinance. The trial court dismissed the action, holding he lacked standing to bring a taxpayer action. For the following reasons, we affirm. *Page 2 
 {¶ 2} Substantive and Procedural History
 {¶ 3} Mr. Simeone, a resident of the City of Niles and its Chief of Police, filed a taxpayer suit against the city and its Auditor Charles Nader (hereafter collectively as "the city"), claiming he was not adequately compensated in accordance with Niles City Ordinance No. 47-2000.
 {¶ 4} In his complaint styled as "Verified Taxpayer's Complaint Seeking Declaratory Judgment and the Issuance of a Writ of Mandamus," Mr. Simeone alleged he was not properly compensated by the city. His allegations relate to the following city ordinances:
 {¶ 5} Niles City Ordinance No. 47-2000 sets forth the compensations and longevity pay for the city's police chief beginning in January 1, 2002. The ordinance increased the police chief's salary and also established a ten percent wage differential between the salary of the chief and that of a police captain as of January 1, 2002. The ordinance also provided for the longevity pay for the police chief.
 {¶ 6} Mr. Simeone was paid in accordance with the ordinance in 2003, 2004, and 2005. He alleged that in 2006, the police captains' union, the Ohio Patrolmen's Benevolent Association, negotiated a collective bargaining agreement which increased the police captains' salaries beginning January 1, 2006. Mr. Simeone received the same compensation in 2006 as he did in 2005.
 {¶ 7} In 2007, Niles City Council passed two ordinances relating to its police chief's pay. In April of 2007, it passed Ordinance 16-07, which adjusted the salaries of non-union, non-elected city employees, and in particular reduced the wage differential for the police chief from ten percent to five percent retroactive to January 1, 2007. In *Page 3 
June of 2007, the City Council passed Ordinance 24-07, which eliminated longevity pay for the police chief retroactive to January 1, 2007. Mr. Simeone has been paid in accordance with these ordinances since their effective date.
 {¶ 8} In September of 2007, Mr. Simeone made a demand upon the Niles City Law Director to bring a mandamus action to compel the city to pay him in accordance with Ordinance 47-2000. When the law director failed to do so, Mr. Simeone filed the instant action on January 31, 2008.
 {¶ 9} In his complaint, Mr. Simeone stated "[t]here exists a large number of taxpayers in the City of Niles, Ohio and it is therefore impracticable to bring them all before the court. Relator, therefore, brings this action both for himself, as a taxpayer of the City of Niles, Ohio, and for all other taxpayers of the City of Niles, Ohio."
 {¶ 10} Mr. Simeone alleged in his complaint that the passage and implementation of Ordinances No. 16-07 and 24-07 constituted unconstitutional taking of property in violation of the U.S. and Ohio Constitution and that the city had a legal duty to compensate him as prescribed by Ordinance No. 47-2000. For relief, he sought (1) a declaration that Ordinances 16-07 and 24-07 are invalid and unconstitutional, and (2) a writ of mandamus directing the city to compensate him in accordance with Ordinance 47-2000.
 {¶ 11} The city filed an answer, asserting it properly compensated Mr. Simeone according to the applicable ordinances. It contended that Mr. Simeone erroneously based his calculation of the wage differential on the captains' gross compensation, which included not only their salary but also a pension contribution by the city when the wage differential should be calculated based on their salary only. The city also *Page 4 
contended Mr. Simeone failed to institute a proper taxpayer action because his complaint failed to state any claims that generally benefit the taxpayers of the City of Niles.
 {¶ 12} Subsequently, the city filed a motion styled as a "Combined Motion to Dismiss and Motion to Stay Discovery," asserting Mr. Simeone lacked standing to assert a viable taxpayer claim upon which relief may be granted under Civ. R. 12(B)(6).
 {¶ 13} In its judgment entry, the trial court noted the city's motion to dismiss was more properly a motion for judgment on the pleadings under Civ. R. 12(C), because the city had already filed an answer prior to filing its motion to dismiss. The court, construing the city's motion as a Civ. R. 12(C) motion, concluded Mr. Simeone lacked standing to bring his claim as a taxpayer action, because the action did not seek to enforce a public right. The court therefore dismissed the action.
 {¶ 14} Mr. Simeone now appeals, raising two assignments of error for our review:
 {¶ 15} "[1.] The trial court erred to the prejudice of plaintiff-appellant by granting defendants-appellees' motion to dismiss on the basis of lack of standing.
 {¶ 16} "[2.] The trial court erred to the prejudice of plaintiff-appellant in preventing Chief Simeone's suit from proceeding on its own behalf in the alternative to proceeding as a taxpayer suit."
 {¶ 17} As a preliminary matter, the record reflects the city filed a motion to dismiss Mr. Simeone's claims for failure to state a claim pursuant to Civ. R. 12(B)(6) based on his lack of standing to raise a taxpayer action, after the city had already filed an answer. Because a Civ. R. 12(B)(6) motion must be filed before a responsive pleading, the trial court is therefore correct in construing his motion as a motion for *Page 5 
judgment on the pleadings under Civ. R. 12(C). See Euvrard v. ChristHosp. Health Alliance (2001), 141 Ohio App.3d 572, 575, citing,State ex. rel. Midwest Pride IV, Inc. v. Pontious (1996),75 Ohio St.3d 565, 569-570; State ex rel. Pirman v. Money (1994), 69 Ohio St.3d 591,592; Lin v. Gatehouse Constr. Co. (1992), 84 Ohio App.3d 96, 99 (the Supreme Court of Ohio has held that an untimely Civ. R. 12(B)(6) motion may be treated as a Civ. R. 12(C) motion for judgment on the pleadings; the defendant here filed a motion to dismiss after filing its answer, the court addressed the trial court's ruling on the motion under Civ. R. 12(C) standard).
 {¶ 18} As the trial court has also correctly pointed out, however, the standard applicable to both motions is essentially the same. SeeGawloski v. Miller Brewing Co. (1994), 96 Ohio App.3d 160, 163 ("a Civ. R. 12(C) motion for judgment on the pleadings has been characterized as a belated Civ. R. 12(B)(6) motion for failure to state a claim upon which relief may be granted, and the same standard of review is applied to both motions"). "Under Civ. R. 12(B)(6) and Civ. R. 12(C), the factual allegations and all reasonable inferences in a complaint must be accepted as true and viewed in a light most favorable to the plaintiff. In order to dismiss a complaint under Civ. R. 12 or to enter judgment on the pleadings, a court must be convinced, based solely on the allegations in the complaint, that the plaintiff can prove no set of facts entitling him to recovery." Bales v. Isaac, 2d Dist. No. 2003-CA-99, 2004-Ohio-4677, ¶ 3. Thus, a trial court's entry of judgment on the pleadings will be reversed only if a plaintiff can prove any set of facts entitling him to relief. Id. Finally, our review of a trial court's ruling on a Civ. R. 12(C) motion is de novo. Fontbank, Inc. v.CompuServe, Inc. (2000), 138 Ohio App.3d 801, 807. *Page 6 
 {¶ 19} Taxpayer Suit
 {¶ 20} Turning now to the question of whether the instant taxpayer action was properly filed, R.C. 733.59 provides for a suit by a taxpayer as follows:
 {¶ 21} "If the village solicitor or city director of law fails, upon the written request of any taxpayer of the municipal corporation, to make any application provided for in sections 733.56 to 733.58 of the Revised Code, the taxpayer may institute suit in his own name, on behalf of the municipal corporation. Any taxpayer of any municipal corporation in which there is no village solicitor or city director of law may bring such suit on behalf of the municipal corporation. No such suit or proceeding shall be entertained by any court until the taxpayer gives security for the cost of the proceeding."
 {¶ 22} "The word `taxpayer' as used in Section 733.59, Revised Code, contemplates and includes any person who, in a private capacity as a citizen, elector, freeholder or taxpayer, volunteers to enforce a right of action on behalf of and for the benefit of the public, and any such person is subject to the conditions imposed by that section, unless waived." (Emphasis added.) State ex rel. Nimon v. Village ofSpringdale (1966), 6 Ohio St.2d 1, paragraph two of syllabus.
 {¶ 23} In accordance with this definition, in order "to maintain such an action under R.C. 733.59, the taxpayer's aim must be to enforce a public right, regardless of any personal or private motive or advantage." State ex rel. Caspar v. Dayton, 53 Ohio St.3d 16, 20
(holding police union members lacked standing in a taxpayer action seeking fringe benefits from the city). "A taxpayer's action is properly brought only when the right under review in the action is one benefiting the public." State ex rel. Fisher v. City of Cleveland,109 Ohio St.3d 33, 2006-Ohio-1827, ¶ 10. *Page 7 
 {¶ 24} In contrast, "when the taxpayer's aim is merely for his own benefit, no public right exists, and a taxpayer action pursuant to R.C. 733.59 cannot be maintained." City of Cleveland ex rel. O'Malley v.White, 148 Ohio App. 3d 564, 2002-Ohio-3633, ¶ 46 (holding electricians' union lacked standing to bring a taxpayer action against the city to enjoin the hiring of non-electricians for certain work). See, also,Home Builders Ass'n. of Dayton v. City of Lebanon, 167 Ohio App. 3d 247,2006-Ohio-595, ¶ 50; City of Cincinnati ex rel. Radford v. City ofCincinnati, 1st Dist. No. C-030749, 2004-Ohio-3501, ¶ 13 (retirement system trustees could not maintain a taxpayer action under R.C. 733.59
because their aim was not to enforce a public right, but was merely to benefit the retirement system and its members).
 {¶ 25} Mr. Simeone asserts that this case involves a public right because "the public has an interest in seeing the continued employment of firefighters and police officers whom it has trained with taxpayer dollars and who have gained invaluable experience in their community," citing Fisher at ¶ 17. He argues that "[i]f a public employee's wages are suddenly cut because of a retroactive ordinance, the individual's livelihood will be affected and may result in that individual having to find a new job in order to sustain his or her lifestyle."
 {¶ 26} A similar argument was rejected by the Eighth District inAss'n. of Cleveland Fire Fighters, Local 93 v. City of Cleveland,156 Ohio App.3d 368, 2004-Ohio-994. There, the City of Cleveland's assistant fire chiefs filed a complaint which included a taxpayer action seeking to enforce a wage differential between the rank of assistant chief and battalion chief as established by a collective bargaining. The Eighth District denied the action as a taxpayer action and provided the following well-reasoned *Page 8 
analysis rejecting plaintiff assistant chiefs' claim that maintaining the wage differential protected a public right:
 {¶ 27} "The Asst. Chiefs [] claim to have standing to pursue their complaint as a taxpayer action under R.C. 733.59. Although a taxpayer action is not prohibited merely because its proponent asserts rights that would confer a private, as well as a public, benefit, the claim may not go forward if it asserts rights that confer solely private benefits. The Asst. Chiefs argue that they are vindicating public rights and conferring a public benefit by restoring the wage differential between them and battalion chiefs. This wage differential, they maintain, is necessary to provide an incentive for qualified candidates to seek the position of assistant chief.
 {¶ 28} "We do not find the claimed public benefit sufficient to maintain a taxpayer suit because the Asst. Chiefs' `incentive' argument is not significant, especially when viewed in light of the private benefit sought. When a union or its members seek to vindicate their rights or the rights of other union members, the benefit sought to be conferred is private, and a taxpayer's suit will not be recognized. Without a more significant public interest at stake, the attempt to gain standing under R.C. 733.59 appears to be a pretext for the assertion of a private cause of action.
 {¶ 29} "The enforcement of private rights often confers a public benefit, but the ability to contemplate a public benefit does not translate every private action against a municipality into a taxpayer's suit under R.C. 733.59." Id. at ¶ 15-17 (internal citations omitted).[1] *Page 9 
 {¶ 30} As in Caspar and Ass'n. of Cleveland Fire Fighters, Local93, Mr. Simeone's action does not represent a public aim, nor does it seek to enforce a public right. He instituted the instant suit to enforce his entitlement to the wage differential conferred in Ordinance No. 47-2000. His claim that his action protects a public right because the public has an interest in retaining an experienced police chief is unconvincing. It assumes an unestablished fact that the purported reduction of the wage deferential would likely result in an individual in his situation leaving the city's employ. No such allegation was made in his complaint. Furthermore, this assumption is faulty because it does not take into consideration other pertinent factors such as the condition of the job market or the prevailing salary for police chiefs in similar communities. Therefore, any claimed public right in this case is simply too remote for us to recognize in a taxpayer action.
 {¶ 31} Mr. Simeone argues that this case is analogous toFisher, supra, where the Supreme Court of Ohio allowed a taxpayer suit by the firefighters' and police officers' unions to challenge a practice by the City of Cleveland which required submission of federal income tax returns as proof of compliance with the city's residency rule. The Supreme Court of Ohio distinguished Caspar and allowed the taxpayer suit under R.C. 733.59. It reasoned:
 {¶ 32} "The city appellants argue that the facts of the instant case are closely allied with those of Caspar, in which several Dayton police officers sought redress under a taxpayer action for the denial of certain fringe benefits. This court held that an action seeking to compel fringe benefits for the relators' personal benefit does not represent a public aim, nor is it seeking to enforce a public right. *Page 10 
 {¶ 33} "Here, however, we reach a different result from that inCaspar and conclude that although the tax records are sought within the employment relationship, the rights to the records and implications thereof do affect a public right.
 {¶ 34} "First and foremost, the records are being sought for the enforcement of a rule that requires certain Cleveland employees to be residents of the city. This rule was the result of a 1982 referendum passed by the residents of Cleveland. Therefore, the interests of the people of Cleveland are implicated in this case in two ways.
 {¶ 35} "First, the interests of the people of Cleveland are implicated because they are voters. Relators' action has the potential (if the city appellants are believed) to eviscerate the ability of the commission to effectively investigate employee-residency issues. Second, residency is a threshold issue for municipal employment by Cleveland. As potential employees, the public is directly affected by the rule itself.
 {¶ 36} "Additionally, the records sought are being used as part of a civil-service-residency-examination process for which mandatory compliance is required to continue employment. A failure to successfully complete the process (for which the tax returns at issue are sought) can result in a termination of public employment. The public has an interest in seeing the continued employment of firefighters and police officers it has trained with taxpayer dollars and who have gained invaluable experience in their community. *Page 11 
 {¶ 37} "These facts are distinguishable from those in Caspar. We hold that a taxpayer action may exist when the ability to obtain or continue public employment is implicated by the alleged abuse of the corporate power." Id. at ¶ 13-18.[2]
 {¶ 38} We recognize that Fisher extends the taxpayer action, defined in Nimon as an action "to enforce a public right," to cases where the terms of employment of public employees implicated a public interest. However, not all terms of employment of public employees implicate such interest — the Fisher court made this clear by expressly distinguishingCaspar, a case involving the police officers' union's challenge of the city's calculation of its firefighter and police officers' vacation time. In contrast to Caspar, the City of Cleveland's "rights to the [officers' and firefighters'] records and implications thereofdo affect a public right," (emphasis added) Id. at ¶ 14, because the challenged practice by the city directly impacts the public's ability to obtain employment with the city as well as the existing employees' ability to continue their employment.
 {¶ 39} As in Caspar, Mr. Simeone filed the instant action to protect a personal benefit. Minimal, if any, public interest or right is implicated. Although the decrease of the wage differential alleged by Mr. Simeone might reduce the incentive for him to continue his employment with the city, the alleged decrease does not affect hisability to continue his employment. Moreover, the instant case affects a single public employee's terms of employment, whereas in Fisher the challenged practice by the city affected all existing firefighters and police officers' ability to continue their employment with the city *Page 12 
as well as all potential citizens who may seek such employment. For these reasons, Fisher is distinguishable. Mr. Simeone's first assignment of error is without merit.
 {¶ 40} In his second assignment of error, Mr. Simeone asserts the court "should allow a taxpayer suit to proceed on behalf of the individual's private rights even if a valid taxpayer cause of action cannot be asserted." He argues even if he is not eligible to file a taxpayer suit, the trial court should have addressed the possibility of the present mandamus action proceeding as a private action. He claims the trial court should have entertained that possibility, arguing that in addition to raising a taxpayer action, his complaint also asserted a private action. He referred us to paragraph four of his complaint.
 {¶ 41} Our review of paragraph four of his complaint indicates no private right of action was alleged. That paragraph stated:
 {¶ 42} "There exists a large number of taxpayers in the City of Niles, Ohio and it is therefore impracticable to bring them all before the court. Relator, therefore, brings this action both for himself, as ataxpayer of the City of Niles, and for all other taxpayers of the City of Niles, Ohio." (Emphasis added.)
 {¶ 43} Thus, Mr. Simeone's complaint on its face failed to raise a private action. He could have moved the trial court for leave to amend his complaint to include such an action, but he failed to so. As such, the trial court was never presented an opportunity to review his claim as a private cause of action. His second assignment is therefore without merit.
 {¶ 44} For the foregoing reasons, we affirm the trial court's determination that Mr. Simeone lacked standing to bring the instant action as a taxpayer suit. *Page 13 
 {¶ 45} The judgment of the Trumbull County Common Pleas Court is affirmed.
CYNTHIA WESTCOTT RICE, J., concurs.
TIMOTHY P. CANNON, J., concurs with Concurring Opinion.
[1] In addition to holding that the assistant fire chiefs could not maintain a taxpayer action because no public right was implicated, the Eighth District also held that the trial court lacked subject matter jurisdiction because the assistant fire chiefs' claim arose under Ohio Rev. Code Chapter 4117 and therefore was within the SERB's exclusive jurisdiction.
[2] After holding that a taxpayer action existed in that case, the court in Fisher went on to conclude the city's request for employees' tax returns constituted an invasion of privacy and should therefore be barred.